# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CRESTVIEW VILLAGE APARTMENTS,
an Illinois Limited Partnership,

      Plaintiff,

         v.

MEL MARTINEZ, the Secretary of Housing
and Urban Development, DONALD
GREEN, the Mayor of the City of Kankakee,
the CITY OF KANKAKEE, and TONY
PERRY,

      Defendants.

No. 03 C 3058
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

This claim arises out of an alleged scheme to deprive Plaintiff of its ownership of

Crestview Village Apartments ("Crestview Village" or "the property"). Plaintiff's complaint

alleged five counts. Plaintiff has dismissed Martinez and HUD as defendants as well as Counts

III and IV. Defendants Donald Green ("Green"), the City of Kankakee ("Kankakee"), and Tony

Perry ("Perry") remain. Green and Kankakee filed a joint motion for summary judgment, and

Perry filed a separate motion for summary judgment. Because the arguments raised in each

motion are similar, I discuss both motions for summary judgment in this order. For the foregoing

reasons, Defendants' motions for summary judgment are granted.[1]

---

[1] All parties have exchanged Local Rule 56.1 Statements and appropriate responses. I
now deal with preliminary objections made by the parties regarding the facts set forth in these
statements.
    A. Defendants' Objections to Plaintiff's Local Rule 56.1 Statement
    Defendants object to the facts asserted to in statements 2, 3, 4, 5, 6, 7, 8, 9, 10, 13, 14, 18,
19, 20, 21, 22, 24 and 25. I consider statement 2 and 4 only to the extent that Starkman
personally believed that repairs had been completed. I consider statement 3, 5, and 8 as

## I. STATEMENT OF FACTS

The partnership of Crestview Village Apartments purchased and operated Crestview

Village Apartments in the mid 1980s and continued to do so until the property was sold to

Affordable Housing during the time that Crestview's partners were in bankruptcy. The complex

was at all times, and continues to be, HUD-approved, low-income housing, and the majority of

its tenants were African American. Al Belmonte ("Belmonte") was involved in the management

of the property until 1999. He was followed by Nancy Carlson ("Carlson"). Perry was the owner

of Eastgate Industrial Park which was a property adjacent to Crestview and president of the East

Side Business Council. Green was the Mayor of Kankakee.

---

Starkman testified that Perry made these statements directly to him; however, I note that to the extent that these statements are offered to prove the contents therein, they are hearsay. I consider statement 6 as it expresses Starkman's personal impression from his conversation with Perry. I strike statement 7 as Starkman's statement is conclusory and unsupported by the record. I strike statement 9 as mischaracterizing the record and as hearsay. I consider statement 10 only to the extent that Starkman believes his damages to be $7,000,000, and not as conclusive proof of his damages. I consider statement 13 to the extent that it expresses Carlson's personal belief. I strike statement 14 as conclusory and speculative without proper foundation. I strike statement 18 as it mischaracterizes the record. I consider statement 19 only to the extent that Carlson spoke to a former property owner. The comments of the former owner are hearsay. I strike statement 20 as conclusory, lacking proper foundation and because it presents a legal conclusion. I consider statement 21 only to the extent that it reflects Carlson's personal belief. I do not consider statement 21 as proof that Perry was exerting political influence over HUD because here statements are conclusory and lack proper foundation. I strike statement 22 and 24 as hearsay. I find that statement 25 is unsupported by the record.

B. Plaintiff's Response to Defendant Perry's Local Rule 56.1 Statement
Plaintiff disputes Defendant Perry's statement 15. Plaintiff provides no reason for this dispute and offers no evidence to disprove this assertion. I therefore consider statement 15 admitted.

C. Plaintiff's Response to Defendants Green and Kankakee's Local Rule 56.1 Statement
Plaintiff disputes Defendants Green and Kankakee's statement 15 yet offers no reason for its dispute and offers no evidence to disprove this assertion. I therefore consider statement 15 admitted.

Kankakee and HUD periodically conducted inspections of the Crestview property. In 1996, inspections by Kankakee and HUD revealed numerous deficiencies including non-functional smoke detectors, fire extinguishers and emergency lighting. Plaintiff contends that these violations were corrected in a timely manner. In a follow up inspection on April 14, 1997, HUD found that a number of deficiencies identified in the 1996 inspection had not been corrected. On October 21, 1999, Kankakee, through the City's Attorney's Office, issued a notice to "repair or demolition." On October 22, 1999, Kankakee filed a civil complaint for non-compliance with the Kankakee City Code. The parties reached a settlement on March 8, 2001 whereby Crestview agreed to correct its existing deficiencies. The agreed order set forth specific requirements needed to bring the building into compliance. Crestview agreed to correct the violations within nine months of the date of the entry of the agreed order.

In 1999, HUD warned Crestview that continued failure to correct violations would result in possible suspension of its HUD contract. On August 16, 1999, another HUD inspection found the property in violation of its standards. HUD advised Crestview that after it had missed a mortgage payment, foreclosure was likely. On June 6, 2000, HUD gave formal notice to Crestview that it was in default. On February 6, 2001, HUD conducted another inspection which revealed below-standard conditions. On May 1, 2001, HUD advised Crestview that it would proceed to foreclose on the property. HUD formally issued a notice of default and foreclosure sale on April 2, 2002. HUD conducted an additional inspection to determine the cost of getting the property up to code and determined that the cost would be $2,283,332.00. Before the foreclosure sale was held, Crestview filed for bankruptcy protection.

Plaintiff has alleged that the actions of Kankakee and HUD were prompted by a conspiracy between Perry, Kankakee, Green and the officials at HUD. Plaintiff claims that Perry wanted to buy the Crestview property so that he could build an industrial complex. In an effort to force Plaintiff to sell its property, Plaintiff alleges that Perry used his political influence to gain the assistance of Green, Kankakee and HUD. Plaintiff disputes that inspections by Kankakee and HUD were done solely for the purpose of ensuring that the building was being maintained in compliance with applicable health and safety regulations. Instead, Plaintiff claims that these inspections were unfair and conducted to put pressure on Plaintiff to force it to sell the property to Perry for a nominal amount.

In support of its conspiracy theory, Plaintiff points to two meetings. The first meeting in January 1999 took place in Green's office. In attendance was Belmonte, Crestview's manager, Alderman Steven Hunter and Perry, president of the East Side Business Council, the area in which Crestview was located. This meeting was convened to discuss Crestview's admittedly overdue sewer bill in excess of $40,000.00 and other concerns regarding code violations. Although Plaintiff has alleged that threats were made at Belmonte at this meeting, no evidence has been put forth to substantiate this fact. In fact, Belmonte does not recall any threats being made by Perry or Green at that meeting. Both Perry and Green deny entering into an agreement to deprive Plaintiff of its property rights to Crestview Village.

The second meeting took place on Perry's boat and included Lawrence Starkman ("Starkman") of Crestview, Perry, and George Callentine ("Callentine"). Perry called this meeting because Crestview was interested in selling its property and Callentine was a potential buyer. In his deposition, Starkman speculates that the conspiracy existed based upon statements

he claims Perry made to him on the boat. According to Starkman, Perry proclaimed that: (1) he

had Green in his pocket and that he had gotten Green his job as Mayor; (2) he "owned" the HUD

secretary and had her "under his wing" (3) Crestview's owners were destroying his plans to

develop the area with all those "niggers"; (4) when he gained control of the Crestview property

he would be able to get $1 million from HUD for repairs and that he would subcontract his work

and get $100,000 in kickbacks from the sub-contractors. Perry denies that he made these

statements. Furthermore, Perry has stated that he doesn't even know if "HUD has a person" in

Kankakee.

Plaintiffs also point to the deposition of Nancy Carlson to support their conspiracy theory.

In her deposition, Carlson states that she believed that Perry used political influence to coerce the

actions of Kankakee and HUD. Carlson, however, does not support these allegations with any

facts.

Perry admits in his deposition that he believed that Crestview had become run down,

lacked maintenance, and that there was a great deal of police activity there. Perry voiced his

concerns to Alderman Hunter, and that he discussed the fact that Crestview should be cleaned at

the meeting with Green. Perry denies entering into an arrangement or agreement with HUD or

anyone else regarding Crestview.

Plaintiff points to the depositions of Starkman and Carlson to support the claim that

Kankakee and HUD inspections were done solely to harass and pressure Plaintiff. Starkman

testified that he believed that all deficiencies identified by HUD were corrected. Carlson testified

that when she managed Crestview, all work orders were processed and performed. Aside from

their testimony, neither Starkman nor Carlson offer any other evidence to show that these

violations were corrected. Carlson further testified that HUD inspectors gave Crestview an improper REACT score and that other buildings she managed had a better REACT score but were in worse condition. Again, Plaintiff offers no proof aside from Carlson's testimony to prove these assertions.

David Harmon ("Harmon") was a routine fire inspector and had involvement in inspecting Crestview Village for safety code compliance and violations starting in 1999. He recalls multiple violations that were not corrected in a timely fashion.

## II. STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The facts presented are to be construed in a light most favorable to the nonmoving party. *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986).

## III. DISCUSSION

As an initial matter, in its response Plaintiff states that it does not maintain its claim for due process violations or its claim under the Sixth Amendment. I therefore consider Plaintiff's Count II withdrawn.

The remaining Count I against Defendants is made pursuant to 42 U.S.C. § 1983.

Plaintiff asserts a class-of-one and alleges that Defendants acted in concert and under color of

law to deprive it of its right to equal protection of the laws as guaranteed by the Fourteenth

Amendment.

To state a claim for relief under § 1983, Plaintiff must establish that (1) it was deprived of

a right secured by the Constitution or laws of the United States, and (2) that alleged deprivation

was committed under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40,

49 (1999). "To succeed on a 'class of one' equal protection claim, a plaintiff must prove that a

state, without rational reason, treated it differently from other similarly situated entities. The

plaintiff bears a 'very significant burden' of offering evidence that other entities are similarly

situated in all relevant respects. The plaintiff's evidence must be such that it allows a reasonable

jury to 'eliminate any reasonably conceivable state of facts that could provide a rational basis for

the classification." *RJB Prop., Inc., v. Board of Ed. of City of Chicago*, 468 F.3d 1005, 1009-010

(7th Cir. 2006)(citations omitted). Although the rational basis analysis is a deferential standard

of review, this Court is not bound by any proffered justification for a city's actions, but can even

hypothesize a rational basis.[2] *Id*. at 1011.

A. Plaintiff Has Failed to Meet Its Burden As A Class-of-One.

Plaintiff has failed to meet its burden as a class-of-one. Plaintiff has presented no

evidence, aside from conclusory and speculative testimony, that any other housing complex had

_____

[2] I do not reach the issue of whether or not a class-of-one must also prove that the State
acted with illegitimate animus because I find that Plaintiff has not shown a similarly situated
complex and has not eliminated the possibility of a rational basis for its classification. *See RJB
Properties*, 468 F.3d at 1010 n.2.

similar violations and was not subjected to inspections and other enforcement mechanisms. Furthermore, Plaintiff has not presented evidence sufficient to show that Defendants did not have a rational basis for their actions.

### 1. Similarly Situated Housing Complex

Plaintiff has offered no evidence, aside from conclusory testimony, to show that a similarly situated housing complex was treated more favorably than Crestview. Although Carlson stated in her deposition that she knew of other properties that she believed were in worse condition than Crestview and that were treated more favorably, she never offers any evidence to support this assertion. There is no evidence in the record that illustrates any complex with similar violations to Crestview that received more favorable treatment. In fact, the record is void of any specific comparisons to other complexes as related to violations and enforcement. Although Starkman and Carlson suggest that Crestview was treated more harshly than other similarly situated buildings, no evidence is offered to support these assertions. Accordingly, I find that Plaintiff has failed to show a similarly situated housing complex that has been treated more favorably.

### 2. Defendants Have Shown A Rational Basis For Their Actions.

Plaintiff alleges that Perry, Green, Kankakee and HUD conspired to force Plaintiff to sell its property so that Perry could obtain it for a cheap price. As part of this conspiracy, Plaintiff alleges that it was subjected to improper inspections and unfair evaluations. Plaintiff has failed however, to show that a conspiracy existed. Furthermore, Plaintiff has failed to put forth evidence that would convince a reasonable trier of fact that Defendants had no rational basis for their actions.

To establish a conspiracy, a plaintiff must show that two or more persons acted in concert to commit an unlawful act, or to commit a lawful act by unlawful means. *Lenard v. Argento*, 699 F.2d 874, 882 (7th Cir. 1983). Private parties "have been found subject to liability under § 1983 when engaged in a conspiracy with one or more parties action under color of state law." *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352 (7th Cir. 1985). Specifically in a § 1983 action, plaintiffs must "demonstrate that the state officials and the private party somehow reached an understanding to deny plaintiffs their constitutional rights." *Moore*, 754 F.2d at 1352.

Plaintiff's claims of conspiracy are unsupported by the record. Although Starkman and Carlson speculate in their depositions that Perry was pressuring Green, Kankakee and HUD, they put forth no facts to support that this was the case. Perry and Green have both denied entering into an agreement to cause Plaintiff to lose ownership of its property. Although Perry has admitted that he was concerned with the condition of Crestview, and indeed, wanted its condition to improve, he has denied ever wanting ownership of the property. Indeed, he denies any interest in purchasing the property in his deposition, and Plaintiff has provided no factual information to contest his testimony. Carlson's belief that Perry wanted to acquire Crestview for commercial purposes and that Green and Kankakee supported him in this quest is based only on assumptions she made. No evidence has been put forth to show or suggest any actual agreement between Perry, Green, Kankakee and HUD aside from the alleged statements Perry made to Starkman at the meeting on his boat.

Furthermore, Plaintiff has failed to provide any evidence to show that Defendants did not have a rational basis for their actions. First, Plaintiff has presented no evidence to support the allegation that Kankakee's legal proceedings against it were baseless. In fact, Plaintiff admits

9

that it violated numerous codes and had several outstanding violations which preceded the legal proceedings.  Next, Plaintiff  presented no evidence to support allegations in its complaint that Kankakee refused to issue necessary city licenses, refused to provide adequate police protection, or that police harassed its tenants.  While Plaintiff contests that inspections carried out by HUD and Kankakee were solely for the purpose of ensuring compliance with health regulations, it presents no evidence to support this claim aside from the depositions of Starkman and Carlson. In his deposition, Starkman admits that the Crestview property did have ongoing code violations. Moreover, Carlson's belief that Crestview inspections were done for the purpose of putting pressure on Plaintiffs to sell the property was based solely on an assumption that Perry wanted to acquire the Crestview property for commercial use.  No evidence other than the deponents' assumption and belief is offered to prove the Plaintiff's assertions.

Finally, although Plaintiff asserts that it corrected its many violations, and that HUD's evaluations were inaccurate, it provides no evidence to support either assertion.  Plaintiff points to no specific error in any HUD report or any violation which was incorrect or inaccurate. Moreover, Plaintiff has failed to present any factual evidence to show that any other property in Kankakee was in worse condition than Crestview Village that was not subject to inspections.

I find that Plaintiff has failed to present evidence sufficient to convince a reasonable trier of fact that any other similarly situated housing complex was treated more favorably or that Kankakee and HUD lacked a rational basis for their actions to enforce their safety codes. Accordingly, I find that Plaintiff has failed to meet its burden as a class-of-one.  Therefore, Plaintiff cannot maintain its equal protection claim under § 1983.

## IV. CONCLUSION

For the foregoing reason, I grant Defendants' motions for summary judgment.

ENTER:

_____

James B. Zagel
United States District Judge

DATE:  December 23, 2009